UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　　　　　　　: **MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　　　　　: 18-CR-442-1 (WFK)
JACQUELINE "JAELYN" MONEKE,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendant.　　　　　　　　:
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 8, 2019, Jacqueline "Jaelyn" Moneke pled guilty to both counts of a two-count Indictment charging him with Possession of Counterfeit and Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i) and Aggravated Identify Theft, in violation of 18 U.S.C. § 1028A(a)(1) and (b). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Jaelyn Moneke is hereby sentenced to time served to be effective January 1, 2023, followed by three years of supervised release, the first two of which are to be served on home confinement, and a $200.00 special assessment.

## BACKGROUND

On August 16, 2018, the Government filed an Indictment charging Defendant with Possession of Counterfeit and Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i) and Aggravated Identify Theft, in violation of 18 U.S.C. § 1028A(a)(1) and (b). Indictment, ECF No. 1. The Indictment also contained a criminal forfeiture allegation. *Id.* On March 8, 2019, Defendant plead guilty to both counts of the Indictment pursuant to a plea agreement. Plea Agreement, ECF No. 30.

The Court hereby sentences Defendant and sets forth its reasons using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.　　Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. <u>Nature and Circumstances of the Offense</u>

Beginning in March 2016, the Federal Bureau of Investigation ("FBI") began to investigate Defendant in connection with device fraud and the use of stolen credit and bank card information. PSR ¶ 6-7. Defendant admitted to engaging in a scheme whereby he purchased stolen credit and bank card information through an app called ICQ. *Id.* ¶ 29. He paid for the stolen information by wiring money via Western Union. *Id.* Defendant then used a scalpel and

2

embossing machine to print the stolen credit card information onto Visa Gift Cards. *Id.* ¶ 30. Defendant then used the gift cards to purchase clothing, electronics, and other goods. *Id.* ¶ 31. Defendant then resold the purchased items for profit through various electronic and internet-based means. *Id.*

    2. <u>History and Characteristics of the Defendant</u>

Defendant, now age 31, was born on December 18, 1989 in New York, New York. PSR ¶ 65. Though born Jacqueline Chiclozi Moneke, Defendant now uses the name Jaelyn but has not yet legally changed his name. *Id.* He is one of three children born to the marital union of Victor and Ngozi Moneke. *Id.* Defendant's parents divorced when he was approximately 10 years old. *Id.* Defendant's father is healthy, lives in Apple Valley, California and is an obstetrician/gynecologist. *Id.* Defendant's mother lives with Defendant in Freeport, New York, and was formerly a nurse practitioner, but has been disabled since 2017, after suffering a stroke. *Id.* Defendant's mother is currently unable to work on her own, and also suffers from high blood pressure. *Id.* Given her disability, Defendant's mother is dependent on Defendant to take her to doctor's appointments, run errands, and maintain the household. *Id.* Both parents are aware of Defendant's arrest in this case and are supportive. *Id.*

Defendant has one living sibling and one deceased sibling. Defendant's sister, Uchenna Moneke died on November 11, 2011, at the age of 25, due to a weak heart muscle. PSR ¶ 67. Defendant's other sister, Chinyelu Moneke, age 34, is a court reporter living in Raleigh, North Carolina. *Id.* She is aware of Defendant's conviction and is supportive. *Id.*

Defendant was reared in an upper-middle income household in Nassau County, New York. *Id.* ¶ 68. He described a close relationship with both parents and siblings. *Id.* Following his parent's separation, Defendant's father continued to provide financial support. *Id.* Defendant

saw his father every weekend, and they would do activities, like fishing. *Id.*

Defendant has had a lifetime of internal struggles with his gender. *Id.* ¶ 69. At the age of 10, Defendant developed strong feelings that he was born in the wrong body. *Id.* Defendant has presented as male since his early teens and in his 20's began psychological treatment and the process of physically transitioning.

Defendant graduated from Freeport High School in Freeport, New York. *Id.* ¶ 80. Defendant has some college credits from Nassau Community College in Garden City, New York. *Id.* ¶ 79. Defendant's previous employment includes: working as a truck driver; self-employed buying and reselling of sneakers; automobile repossession; sales associate at a sneaker store; fleet services clerk with American Airlines at John F. Kennedy International Airport; and contractor for ground services for British Airways at John F. Kennedy International Airport. *Id.* ¶¶ 82-88.

Defendant has never been married and has no children. *Id.* ¶ 70. At the time of the presentence investigation, Defendant had been in a relationship with Star Moran for approximately one year. *Id.* Ms. Moran lives in Brooklyn, is a bus matron and is healthy. *Id.* Ms. Moran is aware of Defendant's conviction and is supportive. *Id.*

Defendant is in good physical health. *Id.* ¶ 73. As previously noted, Defendant suffers from persistent gender dysphoria. *Id.* ¶74. Defendant is under the care of a psychotherapist from Callen-Lorde Community Center. *Id.* ¶ 75. Defendant's psychotherapist recounted increased depressive symptoms associated with heightened dysphoria during a brief period when Defendant was unable to access hormones due to a lapse in insurance coverage. *Id.* Defendant has no reported history of illegal drug or alcohol use. *Id.* ¶ 77.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to both counts of the Indictment, which charged Defendant with Possession of Counterfeit and Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3) and Aggravated Identify Theft, in violation of 18 U.S.C. § 1028A(a)(1). By statute, Defendant faces a maximum term of imprisonment of twelve years, 10 years on Count 1 and 2 years on Count 2. 18 U.S.C. § 1029(c)(1)(A)(i); § 1028A(a)(1). Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2) and (b)(3); a maximum fine of $500,000.00 ($250,000 per count) *id.* § 3571(b); and a mandatory special assessment of $200.00, $100.00 per count *id.* § 3013. Defendant is not eligible for probation, *id.* § 3561(a)(3); 18 U.S.C. § 1028A(b). Defendant is subject to forfeiture, 21 U.S.C. § 853(p), and Restitution is mandatory. 18 U.S.C. § 3663A.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's

**Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable Guideline for a violation of 18 U.S.C. § 1029(c)(1)(A)(i) is § 2B1.1. USSG § 2B1.1(a)(2) provides a base offense level of 6. All parties agree that because the offense involved 10 or more victims, an enhancement of two levels is appropriate. USSG § 2B1.1(b)(2)(a). Additionally, all parties agree that because the offense involved possession or use or device-making equipment, an enhancement of two levels is appropriate. USSG § 2B1.1(b)(11)(a)(i).

The Government and Probation agree that a 14-point enhancement is warranted because Defendant is responsible for a loss exceeding $550,000.00 dollars. USSG § 2B1.1(b)(1)(h). Despite adopting this calculation, both Probation and the Government agree this loss amount may overstate the seriousness of the offense. Probation and the Government agree this may warrant a downward departure from the guidelines. Defense counsel suggests that a loss amount of $50,000.00 dollars is more appropriate. This loss amount results in a 6-point enhancement. USSG § 2B1.1(b)(1)(d).

Because defendant demonstrated acceptance of responsibility in a timely manner, all parties agree that a reduction of three levels is appropriate. USSG § 3E1.1(a) and (b).

Accordingly, by Probation and the Government's guidelines calculation, Defendant's total adjusted offense level of 21. By defense counsel's calculation, Defendant's adjusted offense level is 13. All parties agree defendant has a criminal history category of one (I). Therefore, the Government and Probation's calculation yields a guidelines imprisonment range of 37 to 46

months of custody on Count One to run consecutively to the mandatory two-year custodial sentence on Count Two. Accordingly, Probation and the Government argue the guidelines suggest 61 to 70 months of custody. Under defense counsel's calculation, the guidelines suggest 12 to 18 months of custody on Count One to run consecutively to the mandatory two-year custodial sentence on Count Two. Accordingly, defense counsel argues the guidelines suggest 36 to 42 months of custody.

Nevertheless, all parties recommend a downward departure from their guidelines calculations. Probation recommends a sentence of 36 months of incarceration. The Government recommends incarceration on both counts. Defense counsel recommends Time Served (one day of custody) on Count One; and one day of custody on Count Two, followed by a 3-year term of supervised release with a condition of 2 years of home confinement to satisfy the custodial component required by Count Two. Defense counsel argues that because a 12 to 18 months custodial sentence falls within Zone C of the Sentencing Table, Defendant is eligible for a substitute punishment in lieu of incarceration. Specifically, defense counsel argues the Court may impose intermittent incarceration, or substitute 1 day of community confinement or home detention for each day of incarceration. *See* Def. Obj. at 2-3. Section 5C1.1(d) of the Guidelines provides that where the applicable guideline range is in Zone C of the Sentencing Table (i.e., the minimum term specified in the applicable guideline range is ten or twelve months), the court has two options: (A) It may impose a sentence of imprisonment; (B) Or, it may impose a sentence of imprisonment that includes a term of supervised release with a condition requiring community confinement or home detention. In such case, at least one-half of the minimum term specified in the guideline range must be satisfied by imprisonment, and the remainder of the minimum term specified in the guideline range must be satisfied by community confinement or home detention.

7

In its sentencing memorandum, the Government argues that the sentence requested by defense counsel is "plainly contrary to law." Gov. Sentencing Memorandum, ECF No. 60 at 5. Specifically, the Government argues home confinement cannot be a substitute for the mandatory term of two years of imprisonment to be imposed on Count Two. In sum, the Government asks this Court to deny defense counsel's invitation to impose home confinement instead of incarceration.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). As discussed above, Defendant is transgender and is currently mid-transition. Per Policy Statement 5H1.3, Defendant's mental health status and need for continued treatment is a factor that warrants a departure from the advisory guidelines range. Furthermore, per Application Note 21(C) to USSG §2B1.1, the loss amount used in Probation and the Government's guidelines calculation was primarily determined by multiplying the number of account numbers for which loss is unknown (2,868) by the minimum loss amount ($500.00) set forth in the guidelines. The parties believe this figure overstates the seriousness of the offense and warrants a departure from the advisory guidelines range.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is mandatory in this case. S*ee* 18 U.S.C. § 3663. The Presentence Investigation Report states that affidavits of loss were sent to 19 victims identified by the government who advised Defendant made $10,989.23 in fraudulent charges. The addendum to the Presentence Investigation Report provides that two additional affidavits of loss were returned after the filing of the PSR. As discussed during the sentencing hearing, the parties are ordered to submit a jointly-proposed stipulation and order setting forth the final restitution amount by Friday, August 20, 2021 at 5:00 P.M. *See* Separate Restitution Order for additional details.

## CONCLUSION

A sentence of time served, to be effective January 1, 2023, to be followed by three years of supervised release, the first two of which are to be served on home confinement, and a $200.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report barring any errors contained therein and to the extent they are not inconsistent with this opinion. The Court imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

                                                    s/ WFK
                                   _____
                                   HON. WILLIAM F. KUNTZ, II
                                   UNITED STATES DISTRICT JUDGE

Dated: July 26, 2021
       Brooklyn, New York