UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

UNITED STATES OF AMERICA, :
:
v. : **MEMORANDUM AND ORDER**
: 18-CR-442 (WFK)
JACQUELINE "JAELYN" MONEKE, :
:
Defendant. :

-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 8, 2019, Jaelyn Moneke ("Defendant") pled guilty to one count of possession of counterfeit and unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i) and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(4). Plea Agreement ¶ 1, ECF No. 30; *see also* Indictment ¶¶ 1–2, ECF No. 1.[1] On July 11, 2022, the U.S. Court of Appeals for the Second Circuit vacated Defendant's sentence and remanded the case for re-sentencing. USCA Mandate, ECF No. 74. The Court now re-sentences Defendant and provides a complete statement of reasons, pursuant to 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served, to be followed by three (3) years of supervised release with four special conditions, with respect to Count One; and two (2) years of incarceration with respect to Count Two, to run consecutively to the sentence imposed for Count One; mandatory restitution as outlined in the Order of Restitution, ECF No. 65; forfeiture of U.S. currency and items identified in the Final Order of Forfeiture, ECF No. 54; and payment of a $200.00 special assessment.

## I. Background

On March 8, 2019, Defendant pled guilty to one count of possession of counterfeit and unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i), and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(4). Plea Agreement ¶ 1; *see also* Indictment ¶¶ 1–2.

On July 23, 2021, the Court sentenced Defendant to time served, to be effective January 1, 2023, followed by three years of supervised release with four special conditions, the first two

[1] Citations are to the docket in *United States v. Moneke*, 18-CR-442. Page pincites refer to the ECF page numbers assigned to a filing where available, and where no ECF heading is present, to the page numbers listed in the original filing.

years of which were to be served on home confinement. Sentencing Mem. & Order ("Mem. & Order") at 1, ECF No. 61; *see also* Judgment at 2–3.

On September 9, 2021, the Government filed a notice of appeal to the Second Circuit arguing this Court erred by not imposing the mandatory minimum of two years' incarceration for Count Two. ECF No. 68. On appeal, Defendant agreed with the Government and requested the Second Circuit vacate this Court's sentence and remand to this Court for re-sentencing. *See generally United States v. Moneke*, 21-2172, ECF No. 52 (2d Cir. Mar. 15, 2022). Defendant argued the mandatory minimum sentence of two years for aggravated identity theft "binds a sentencing court by explicitly providing a sentencing floor." *Id.* ¶ 21 (internal quotation marks and citation omitted).

On July 11, 2022, the Second Circuit granted Defendant's motion to vacate his sentence and remand for re-sentencing. USCA Mandate at 1. On November 4, 2024, this Court scheduled a re-sentencing hearing. ECF No. 92.

In addition to the parties' sentencing submissions, the parties briefed the appropriateness of permitting Defendant to withdraw his guilty plea. *See* Defense Letter regarding Appropriateness of Withdrawing Plea (the "Def. Ltr. regarding Plea Withdrawal") ECF No. 89; Government Letter regarding Plea Withdrawal, ECF No. 93; Defense Reply regarding Plea Withdrawal, ECF No. 94.

## II. Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the Guidelines operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the

Sentencing Guidelines range, the court "shall state, in open court, the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the Court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1).

#### *1. Nature and Circumstances of the Offense*

In March 2016, the Federal Bureau of Investigation (the "FBI") began investigating Defendant in connection with device fraud and the use of stolen credit and bank card

information. Presentence Investigation Report (the "PSR") ¶ 6–7, ECF No. 35. Defendant admitted to engaging in a scheme whereby he purchased stolen credit and bank card information through an app called ICQ. *Id.* ¶ 29. He paid for the stolen information by wiring money via Western Union. *Id.* Defendant then used a scalpel and embossing machine to print the stolen credit card information onto Visa Gift Cards. *Id.* ¶ 30. Defendant used the gift cards to purchase clothing, electronics, and other goods. *Id.* ¶ 31. Defendant resold some of the purchased items for profit through various electronic and internet-based means. *Id.*

In sum, Defendant possessed at least 2,870 unauthorized credit and debit account numbers. *Id.* ¶ 33.

2. *Family and Personal Background*

Defendant was born on December 19, 1989, in New York, New York. *Id.* ¶ 65. Though born "Jacqueline Chiclozi Moneke," Defendant now uses the name Jaelyn. *Id.* Defendant has had a lifetime of internal struggles with his gender. *Id.* ¶ 69. At the age of ten, Defendant developed strong feelings he was born in the wrong body. *Id.* Defendant has presented as male since his early teens and began psychological treatment and the process of physically transitioning in his twenties. *Id.*

Defendant is one of three children born to the marital union of Victor and Ngozi Moneke. *Id.* ¶ 65. Defendant's parents divorced when he was approximately ten years of age. *Id.* Defendant grew up in an upper-middle income household in Nassau County, New York. *Id.* ¶ 68. He described a close relationship with both parents and siblings. *Id.* Following his parents' separation, Defendant's father continued to provide financial support. *Id.* Defendant saw his father every weekend. *Id.*

As of the disclosure of the PSR, Defendant's father was healthy, lived in Apple Valley,

California, and was an obstetrician/gynecologist. *Id.* ¶ 65. Defendant's mother lived with Defendant in Freeport, New York, and was formerly a nurse practitioner, but has been disabled since 2017 after suffering a stroke. *Id.* Defendant's mother is currently unable to walk on her own and also suffers from high blood pressure. *Id.* Given her disability, Defendant's mother is dependent on Defendant to take her to doctor's appointments, run errands, and maintain the household. *Id.* ¶ 66. Both parents are aware of Defendant's arrest in this case and, as of the disclosure of the PSR, were supportive. *Id.* ¶ 65.

Defendant has one living sibling and one deceased sibling. *Id.* ¶ 67. Defendant's sister, Uchenna Moneke, died on November 11, 2011, at twenty-five years of age due to a weak heart muscle. *Id.* Defendant's other sister, Chinyelu Moneke, is a court reporter living in Raleigh, North Carolina. *Id.* She is aware of Defendant's conviction and, as of the disclosure of the PSR, was supportive. *Id.*

Defendant has never been married and has no children. PSR ¶ 70.

*3. Educational and Employment History*

In 2008, Defendant graduated from Freeport High School in Freeport, New York. *Id.* ¶ 80. Defendant earned some college credits from Nassau Community College in Garden City, New York, but left in 2012 after obtaining employment at John F. Kennedy International Airport ("JFK"). *Id.* ¶ 79.

Defendant has previously worked: as a truck driver; as a buyer and reseller of sneakers on a self-employed basis; as an employee of an automobile repossession company; as a sales associate at a sneaker store; as a fleet services clerk with American Airlines at JFK; and as a contractor for ground services for British Airways at JFK. *Id.* ¶¶ 82–88. According to defense counsel, Defendant obtained his commercial driver's license and was employed by two different

companies from April 2019 through June 2024. Def.'s Ltr. regarding Plea Withdrawal at 9.

Around the time the parties submitted their sentencing materials, defense counsel reported Defendant had been unemployed since June 2024. *Id.* at 10. Defense counsel also reported Defendant developed a business plan to start his own juice bar/coffee shop and had been training to become a funded day trader. *Id.* at 10.

*4. Physical and Mental Health*

In terms of physical and mental health, as previously noted, Defendant suffers from persistent gender dysphoria. *Id.* ¶ 74. Defendant is under the care of medical providers at the Callen-Lorde Community Center. *See*, *e.g.*, Def. Ltr. regarding Plea Withdrawal at 23; *see also* Exs. D, J to Def. Ltr. regarding Plea Withdrawal; PSR ¶ 75.

In 2018, Defendant's psychotherapist recounted increased depressive symptoms associated with heightened dysphoria during a brief period when Defendant was unable to access hormones due to a lapse in insurance coverage. PSR ¶ 75. Defendant's gender confirmation surgery was originally scheduled for October 2021 but was postponed due to complicated health and insurance issues. Def. Ltr. regarding Plea Withdrawal at 21; *see also* Ex. 1 to Supplemental Defense Memorandum ("Suppl. Def. Mem."), ECF No. 97. As of the time of re-sentencing, Defendant's medical provider expected Defendant's surgery to take place in 2025. Ex. 1 to Suppl. Def. Mem. Following Defendant's gender confirmation surgery, Defendant would purportedly need one year of recovery time. Def. Ltr. regarding Plea Withdrawal at 23.

In October 2021, Defendant received injuries in his neck, lower back, left shoulder, and left knee after a drunk driver hit his car. Def. Ltr. regarding Plea Withdrawal at 21–22; *see also* Ex. 2 to Suppl. Def. Mem. Defendant received injections to manage his spinal injuries and had surgery to treat his shoulder injury. Def. Ltr. regarding Plea Withdrawal at 22. In September

2022, Defendant underwent abdominal surgery for a previously misdiagnosed condition unrelated to the October 2021 car accident. *Id.* Defendant also suffered ankle injuries in the workplace, for which Defendant is still being treated. *Id.*

5. *Substance Abuse*

Defendant has no reported history of illegal drug or alcohol use. PSR ¶ 77. Defendant reported drinking alcohol "occasionally, a few times per month[.]" *Id.*

6. *Prior Convictions*

In 2018, in connection with a handgun obtained during the search in the instant investigation, Defendant was convicted of criminal possession of a weapon and sentenced to three years of probation. *Id.* ¶ 57.

In 2018, Defendant was also convicted of reckless driving, a misdemeanor, and sentenced to one year of conditional discharge. *Id.* ¶ 58. The conviction was subsequently dismissed on appeal. Third. Add. to PSR at 1, ECF No. 56.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding the law, and from engaging in illicit activity.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of possession of counterfeit and unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i) ("Count One"), and one count of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(4) ("Count Two"). Plea Agreement ¶ 1. For Count One, Defendant faces a maximum term of incarceration of ten years, and a maximum term of supervised release of three years; if a condition of release is violated, Defendant may be sentenced to up to two years' incarceration without credit for pre-release incarceration or time previously served on post-release supervision. *See* 18 U.S.C. §§ 1029(a)(3), (c)(1)(A)(i), 3583(b)(2), (e).

For Count Two, Defendant faces a statutorily required term of incarceration of two years which must run consecutively to any other term of incarceration, and a maximum term of supervised release of one year; if a condition of release is violated, Defendant may be sentenced to up to one year of incarceration without credit for pre-release incarceration or time previously served on post-release supervision. *See* 18 U.S.C. §§ 1028A(a)(1), (b)(2), 3583(b)(3), (e).

Defendant is ineligible for probation. 18 U.S.C. §§ 3561(a)(3), 1028A(b)(1). Defendant faces a maximum fine of $250,000.00 for each count, 18 U.S.C. § 3571(b), or not more than the greater of twice the gross gain or twice the gross loss, 18 U.S.C. § 3571(d). Defendant also faces a mandatory special assessment of $200.00, 18 U.S.C. § 3013. As of the disclosure of the PSR, Defendant had not shown his inability to pay a fine. PSR ¶ 93. Defendant is subject to forfeiture, 18 U.S.C. § 982(a)(2)(B), and mandatory restitution, 18 U.S.C. § 3663A. The Court reimposes forfeiture in the amount of $110,000.00 and restitution in the amount of $10,989.23.

Final Order of Forfeiture at 1; Order of Restitution at 1; *see also* Gov't Sent'g Mem. ("Gov't Mem.") at 7, ECF No. 96 (requesting the Court reimpose these orders); Suppl. Def. Mem. at 1 (consenting to these orders).

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

At Defendant's initial sentencing, the Court calculated Defendant's recommended Guidelines sentencing ranges to be thirty-seven (37) to forty-six (46) months of incarceration for Count One, and twenty-four (24) months for Count Two based on a Total Adjusted Offense Level of 21 and a Criminal History Category of I. *See* Statement of Reasons at 1, ECF No. 67; *see generally* Mem. & Order at 5–7.

1. *Defendant's Sentencing Recommendation*

The parties' sentencing recommendations vary. Defense counsel recommends the Court sentence Defendant to two years of incarceration, as required by 18 U.S.C. § 1028A, and immediately thereafter grant Defendant's motion for a sentence reduction to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def.'s Sent'g Mem. ("Def. Mem.") at 2, ECF No. 95. Alternatively, defense counsel asks the Court to find the mandatory minimum sentence of incarceration unconstitutional as applied to Defendant, and to therefore sentence Defendant to time served. *Id.* Defense counsel further consents to the Court imposing restitution in the amount of $10,989.23 and forfeiture in the amount of $110,000.00. Suppl. Def. Mem. at 1.

Defense counsel also makes a number of arguments as to the appropriateness of the Court reducing Defendant's sentence to time served under the compassionate release statute. First,

defense counsel argues Defendant properly exhausted his administrative remedies under 18 U.S.C. § 3582(c) because, on January 4, 2022, defense counsel requested the Bureau of Prisons' (the "BOP") Northeast Regional Counsel's Office, the Metropolitan Detention Center's Warden, and the U.S. Marshals for the Eastern District of New York consider reducing Defendant's sentence. Def. Ltr. regarding Plea Withdrawal at 32 n. 48; *see also* Ex. L to Def. Ltr. Regarding Plea Withdrawal.

Second, defense counsel asserts, even if Defendant had not properly exhausted his administrative remedies, the Court is authorized to waive the exhaustion requirement based on futility, prejudice, or the inadequacy of administrative relief. Def. Ltr. regarding Plea Withdrawal at 32, n. 49.

Third, defense counsel maintains Defendant need not be incarcerated for the Court to consider Defendant's motion. *Id.* at 33–34. However, if the Court finds Defendant must be in custody to consider a motion for compassionate release, defense counsel suggests the Court sentence Defendant, allow Defendant to surrender to the custody of the U.S. Marshals at the courthouse, and consider Defendant's motion for compassionate release the same day. *Id.* at 34.

As to the merits of granting a motion to reduce Defendant's sentence, defense counsel argues the following factors, taken together, constitute extraordinary and compelling circumstances warranting a sentence reduction: (1) Defendant's criminal history category of I; (2) Defendant's behavior over the last six years while under the Court's supervision; (3) Defendant's demonstrated commitment to meeting his restitution and forfeiture obligations; (4) Defendant's role as his mother's sole caretaker; (5) Defendant's vulnerability and status as a transgender man mid-transition and the resulting medical and safety concerns of potential incarceration; (6) the BOP's ineptitude at consistently meeting inmates' medical needs; (7)

"[s]hifting and uncertain BOP policies concerning transgender inmates; (8) the defense counsel's position Defendant should be permitted to withdraw his plea and replead solely to Count One of the Indictment given this would have been consistent with the policy of the U.S. Department of Justice (the "DOJ"); and (9) the unconstitutionality of the statutory mandatory minimum as applied to Defendant. Def. Ltr. regarding Plea Withdrawal at 36–37; *see also* Suppl. Def. Mem. at 1; Def. Reply regarding Plea Withdrawal at 1–2, ECF No. 94 (noting then-President-elect's campaign rhetoric regarding transgender individuals, including his campaign promises to issue an executive order requiring federal agencies to cease programs which promote the concepts of gender and sex transition, constitutes changed circumstances affecting the appropriateness of Defendant's incarceration).

While defense counsel argues the Court should find the two-year mandatory minimum, as applied to Defendant, violates the Eighth Amendment's prohibition of cruel and unusual punishment, defense counsel ultimately requests the Court impose the two-year mandatory minimum sentence and thereafter immediately grant Defendant's motion for compassionate release for the sake of judicial efficiency. Suppl. Def. Mem. at 5.

Defense counsel further asserts the 18 U.S.C. § 3553(a) factors weigh in favor of reducing Defendant's sentence to time served, specifically arguing: (1) Defendant's offense was an economic and non-violent crime; (2) Defendant's Guidelines range likely overstates the severity of the offense; (3) Defendant has a minimal criminal history and accompanying lower risk of recidivism; (4) Defendant's status as a transgender man yields both specific medical needs which the BOP likely will be unable to sufficiently meet—leading to severe mental and physical injury—and safety concerns in prison; (5) incarceration is unnecessary to reflect the seriousness of the crime, achieve the goals of sentencing, and would not allow Defendant to

receive effective medical care; (6) the unavailability of a non-incarceratory sentence weighs in favor of compassionate release; (7) DOJ policy cautions against the unnecessary charging of crimes with mandatory minimum sentences; and (8) Defendant will have a stronger ability to make his restitution payments if he receives a non-incarceratory sentence. Suppl. Def. Mem. at 2–3. The Court has also read and considered the letter submitted by Defendant's mother. Ex. A to Def. Mem.

2. *The Government's Sentencing Recommendation*

The Government recommends the Court impose a sentence meeting the goals of § 3553(a) which otherwise complies with the statutorily required two years of incarceration; restitution in the amount of $10,989.23; and forfeiture in the amount of $110,000.00. *See* Gov't Mem. at 1, 7. The Government makes clear, however, it would "consent . . . to an additional reasonable delay of [Defendant's] surrender until after he has undergone the final phase of his transition and had sufficient time thereafter to rehabilitate," Gov't Letter Requesting Re-sentencing at 4, ECF No. 84, which appears to be at least one year after surgery, Gov't Mem. at 10.

The Government recommends the Court reject defense counsel's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Procedurally, the Government argues Defendant: (1) has failed to exhaust his administrative remedies; (2) cannot meet the standard for waiver of such requirement; (3) moves for compassionate release prematurely, as he is not currently in BOP custody nor has he served an incarceratory sentence; and (4) is inappropriately seeking to circumvent the statutorily required two-year mandatory minimum. Gov't Mem. at 9–12.

Substantively, the Government argues Defendant's motion for compassionate release should be denied because: (1) Defendant's criminal history category of I and his lack of subsequent offenses are not extraordinary and compelling circumstances warranting relief; (2) Defendant has not demonstrated a commitment to making restitution to his victims nor making good on his forfeiture obligations; (3) Defendant's caretaking responsibilities for his ailing mother, while significant, do not warrant compassionate relief because many families face these same challenges, Defendant has other family members who could help Defendant's mother, and Defendant has had years to find alternative care; (4) the BOP can meet Defendant's healthcare needs and protect Defendant's personal safety; and (5) the cited internal DOJ policies do not create substantive rights for Defendant. *Id.* at 12–18.

Finally, the Government asserts the statutorily mandated two-year incarceratory sentence would not be cruel and unusual punishment as applied to Defendant. *Id.* at 18–19.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

**E. Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

As discussed above, Defendant is a transgender man and is currently mid-transition. Per U.S.S.G. § 5H1.3 (Policy Statement),[2] Defendant's mental health status and need for continued treatment is a factor which warrants a downward departure from the advisory Guidelines range. Furthermore, per Application Note 21(C) to U.S.S.G. §2B1.1, a downward departure may be warranted because the loss amount used in Defendant's Guidelines calculation result in an

[2] A court "typically applies the Guidelines Manual in place at the time of sentencing[.]" *United States v. Pereira-Gomez*, 903 F.3d 155, 160 n. 6 (2d Cir. 2018).

offense level which may overstate the seriousness of the offense. The Government and defense counsel both point to U.S.S.G. § 1B1.13 (Policy Statement) in their arguments regarding whether extraordinary and compelling circumstances exist to warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See* Gov't Mem. at 8; Def. Ltr. Regarding Plea Withdrawal at 34–36.

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6).

Defense counsel argues a non-mandatory minimum sentence would help the Court avoid unwarranted sentencing disparities. Suppl. Def. Mem. at 2. Specifically, defense counsel points to internal DOJ policy regarding the harshness, severity, and disproportionality of sentences resulting from mandatory minimums. *Id.* The Government, on the other hand, asserts a sentencing disparity would result from Defendant receiving a non-incarceratory sentence. *See* Gov't Mem. at 12.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

**G. The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $10,989.23 shall be ordered in this case. *See* Order of Restitution.

## IV. Conclusion

For the reasons set forth above, the Court imposes a sentence of time served to be followed by three (3) years of supervised release with four (4) special conditions for Count One, and two (2) years of incarceration for Count Two. Pursuant to 18 U.S.C. § 1028A(b), the terms of incarceration on Counts Two shall run consecutively to Count One. This sentence is sufficient but not greater than necessary to accomplish the purposes of § 3553(a). The Court's Order of Forfeiture, issued on June 21, 2021, Order of Restitution, issued on August 13, 2021, and order for the $200.00 mandatory special assessment remain in place. The Court does not impose a fine.

The Court also expressly adopts the factual findings of the PSR and addenda thereto, ECF Nos. 35, 41, 49, and 56, as corrected herein, to the extent they are not inconsistent with the Court's sentence.

The Court further ORDERS Defendant to surrender to his designated facility on January 15, 2027.

**SO ORDERED.**

S/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 1, 2026
Brooklyn, New York